UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WESTFIELD INSURANCE COMPANY,

    Plaintiff,

v.

EAGLE ELECTRIC, INC., RC DEVELOPMENT GROUP, INC., MECO OF NORTH FLORIDA, INC. and PORT CONSOLIDATED, INC.,

    Defendants.

Case No: 8:16-cv-1639-T-30AEP

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Final Summary Judgment (Doc. 28), Defendant Eagle Electric's Response in Opposition (Doc. 29), and Defendant Port Consolidated's Response in Opposition (Doc. 32). Upon review, the Court concludes that Plaintiff's motion should be denied.

### FACTUAL BACKGROUND

This is an action for declaratory judgment. Westfield Insurance Company seeks a declaration that it has no duty to defend or indemnify Eagle Electric in a state lawsuit filed by Port Consolidated against Eagle Electric, RC Development Group, and MECO of North Florida.

Port Consolidated makes the following factual allegations in its complaint (Doc. 28-1). Port Consolidated contracted with RC Development Group and MECO to install a fuel storage and dispensing system at 5007 Denver Street in Tampa. Thereafter, RC Development Group and/or MECO subcontracted with Eagle Electric to construct and wire

the system. One or more of the defendants wired the dispensing system's pumps incorrectly, such that users were able to pump fuel without being detected by the meter or charged for the fuel. As a result of this faulty construction, users were able to steal diesel fuel over a period of time. Port Consolidated alleges that the defendants' actions constitute negligence and breach of contract. It seeks monetary damages for the lost fuel and the costs to repair the defective work.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion—"the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in its favor. *Id.* at 255.

## DISCUSSION

In Florida, an insurer's duty to defend is determined from the allegations in the complaint against the insured. *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813 (Fla. Dist. Ct. App. 1985) (citations omitted). The insurer must defend the insured if the allegations could allow the insured to be covered by the insurance policy. *State Farm

*Mutual Auto. Ins. Co. v. Universal Atlas Cement Co.,* 406 So. 2d 1184 (Fla. Dist. Ct. App. 1981). If the complaint alleges facts partially within and partially outside the policy's coverage, the insurer is nevertheless obligated to defend the entire suit. *Khatib v. Old Dominion Ins. Co.*, 153 So. 3d 943, 947 (Fla. Dist. Ct. App. 2014) (citation omitted). If there are any doubts as to whether a duty to defend exists in a particular case, those doubts must be resolved in the insured's favor. *Baron Oil Co.,* 470 So. 2d at 814.

Westfield argues that it has no duty to defend Eagle Electric because its insurance policy does not cover the damages claimed by Port Consolidated. Pursuant to the policy, Westfield will cover any damages Eagle Electric becomes legally obligated to pay as a result of bodily injury or property damage. (Doc. 28-2, pg. 2.) Thus, Westfield must defend Eagle Electric if the damages related to either the lost fuel or the improper wiring constitute property damage, assuming no policy exclusions bar coverage. The Parties appear to agree that the policy does not cover the cost of replacing the wiring, so the Court will focus its analysis on the damages claimed for the fuel.

The policy defines "property damage" to include both (1) "[p]hysical injury to tangible property, including all resulting loss of use of that property," and (2) "[l]oss of use of tangible property that is not physically injured." (Doc. 28-2, pg. 17.) Westfield argues that stolen property does not constitute property damage. However, it bases its argument primarily on cases from other jurisdictions, which are not binding on this Court. As discussed below, the relevant Florida case law does not support this proposition.

The Fourth District Court of Appeal first considered this issue in *U.S. Fidelity & Guaranty Co. v. Mayors Jewelers of Pompano*, 384 So. 2d 256 (Fla. Dist. Ct. App. 1980). A contractor improperly installed riot glass in the window of a jewelry store, which allowed

3

a thief to break in and steal valuable jewelry. *Id*. at 257. The contractor made a claim on his liability insurance, which covered losses due to bodily injury or property damage. *Id*. The insurer argued that the theft did not constitute property damage, which the policy defined as "injury to or destruction of tangible property." *Id*. The court disagreed, holding that the term "property damage" includes damage due to "loss, disappearance, or theft." *Id*. at 258. It explained, "We are persuaded . . . that property is damaged to the extent that its market value is diminished. . . . When property is stolen, its market value to the one who lawfully possessed it is totally diminished. We therefore hold that theft of personal property is 'property damage' unless a contrary intent is clearly expressed." *Id*. at 258.

A few years later, in *Travelers Insurance Co. v. De Bothuri*, the court revisited the question of whether the theft of property constitutes property damage. 465 So. 2d 662 (1985). The applicable insurance policy defined "property damage" the same as in Eagle Electric's policy, covering (1) physical injury to tangible property and (2) loss of use of tangible property that is not physically injured. *Id*. at 663. The parties agreed that the stolen personal property in that case was covered only by the second part of the definition. *Id*. The court affirmed the trial court's order finding coverage. *Id*.

Although the Court does not necessarily agree with the reasoning in these cases, it is bound to apply existing Florida law. Because the theft of property diminishes its market value to the person who lawfully possessed it, that theft must be considered property damage unless the insurance policy clearly expresses a contrary intent. *Mayors Jewelers*, 384 So. 2d at 258. Eagle Electric's policy does not—it does not expressly exclude coverage for theft, nor does it define "property damage" narrowly enough to exclude this coverage. Consequently, the Court must find that the lost fuel constitutes property damage.

4

Because Port Consolidated is suing Eagle Electric to recover for property damage, Westfield must defend Eagle Electric unless a policy exclusion bars coverage. Westfield argues that exclusion M does just that. However, exclusion M applies only if the stolen fuel has not been physically injured. (Doc. 28-2, pg. 6.) The Court cannot make this assumption. Unlike stolen jewelry or personal property, fuel is a consumable good. While there is no reason to assume that stolen jewelry or personal property has been physically injured, there is reason to think that the fuel has been. A jury could find that the individuals who took the fuel used that fuel after they stole it.[1] The fate of the fuel is a question of fact that is best left for the jury.

Based on the allegations in Port Consolidated's complaint, the Court cannot conclude that Westfield has no duty to defend Eagle Electric. Accordingly, the Court cannot grant Westfield's request for summary judgment.

It is therefore ORDERED AND ADJUDGED that:

1.   Plaintiff's Motion for Final Summary Judgment (Doc. 28) is denied.

**DONE** and **ORDERED** in Tampa, Florida, on July 28th, 2017.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

---

[1] This is underscored by the complaint's reference to the individuals who took the fuel as "user[s]" of the fuel.

5